UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

RIFKA RENEE ELIAS,

                            Plaintiff,      **ANSWER**

    -against-                                  No. 19-CV-11411-JMF

NYC HEALTH AND HOSPITAL,

                            Defendant.
---------------------------------------------------------------------------x

        Defendant New York City Health and Hospital Corporation d/b/a NYC Health + Hospitals ("H+H"),[1] by its attorney, James E. Johnson, Corporation Counsel of the City of New York, for its Answer to the Complaint, respectfully alleges as follows:

        1.      Denies the allegations set forth in paragraph "1" of the Complaint, except admits that Plaintiff purports to proceed as set forth therein.

        2.      Denies the allegations set forth in paragraph "2" of the Complaint, except admits that Plaintiff is employed by H+H and is assigned to NYC Health + Hospitals/Coney Island located at 2601 Ocean Parkway, Brooklyn, NY.

        3.      Denies the allegations set forth in "3" of the Complaint, except admits that Plaintiff purports to proceed as set forth therein.

        4.      Denies the allegations set forth in paragraph "4A" of the Complaint.

---

[1] As the Court noted in its decision regarding Defendants' motion to dismiss the complaint, Plaintiff consented to dismissal of her claims against the City of New York and her claim for failure to promote. ECF No. 25 ("Pl.'s Mem."), at 1. She did not oppose, or even address, Defendants' motion to dismiss any claims based on the charge she filed with the Equal Employment Opportunity Commission on or around November 17, 2016. *See id.*; ECF No. 27 at 1. Accordingly, the Court dismissed all of the foregoing claims either on consent or as abandoned. *See id.* at 1—2. Thus, the only remaining claims in this action are Plaintiff's hostile work environment claims under federal and state law against H+H. *See id.* at 2.

5. Denies the allegations set forth in paragraph "4B(1)"[2] of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegation concerning Plaintiff's retention of counsel and admits that Plaintiff purports to proceed as set forth therein.

6. Denies the allegations set forth in paragraph "4B(2)" of the Complaint, except admit that H+H hired Plaintiff in the title of Clerical Associate II in 2011.

7. Denies the allegations set forth in paragraph "4B(3)" of the Complaint.

8. Denies the allegations set forth in paragraph "4B(4)" of the Complaint, except admits that Plaintiff took a leave of absence in or around 2012.

9. Admits the allegations set forth in paragraph "4B(5)" of the Complaint.

10. Denies the allegations set forth in paragraph "4B(6)" of the Complaint, except admits that in or about September 2014, Director Lilya Berns conducted Plaintiff's annual employee performance evaluation and rater her overall "Satisfactory."

11. Denies the allegations set forth in paragraph "4B(7)" of the Complaint.

12. Denies the allegations set forth in paragraph "4B(8)" of the Complaint.

13. Denies the allegations set forth in paragraph "4B(9)" of the Complaint.

14. Denies the allegations set forth in paragraph "4B(10)" of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "4B(10)" of the Complaint as to who Plaintiff contacts.

---

[2] Since paragraph 4B of the Complaint refers to a Statement of Facts annexed as Exhibit 2, Defendant is annexing, as Appendix A, a copy of the Complaint annotating Exhibit 2 to include paragraph numbers in order to facilitate its clear response to paragraph 4B.

15. Denies the allegations set forth in paragraph "4B(11)" of the Complaint, except admits that, on or around April 2015, Director Lilya Berns conducted Plaintiff's employee performance evaluation and rated her overall "Below Standard."

16. Denies the allegations set forth in paragraph "4B(12)" of the Complaint.

17. Denies the allegations set forth in paragraph "4B(13)" of the Complaint.

18. Denies the allegations set forth in paragraph "4B(14)" of the Complaint.

19. Denies knowledge or information sufficient to form a belief as to the truth the allegations set forth in paragraph "4B(15)" of the Complaint.

20. Denies knowledge or information sufficient to form a belief as to the truth the allegations set forth in paragraph "4B(16)" of the Complaint.

21. Denies the allegations set forth in paragraph "4B(17)" of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegation concerning the communication alleged to have been sent by Plaintiff's attorney to Coney Island Hospital Human Resources in 2015.

22. Denies the allegations set forth in paragraph "4B(18)" of the Complaint.

23. Denies the allegations set forth in paragraph "4B(19)" of the Complaint.

24. Denies the allegations set forth in paragraph "4B(20)" of the Complaint except knowledge or information sufficient to form a belief as to the truth of the cited statement alleged to have been given to Plaintiff on December 30, 2015.

25. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "4B(21)" of the Complaint.

26. Denies the allegations set forth in paragraph "4B(22)" of the Complaint.

27. Denies the allegations set forth in paragraph "4B(23)" of the Complaint, except admits that Director Lilya Berns evaluated Plaintiff on or around October 14, 2016, and issued Plaintiff a "Below Standard" rating.

28. Denies the allegations set forth in paragraph "4B(24)" of the Complaint.

29. Denies the allegations set forth in paragraph "4B(25)" of the Complaint.

30. Denies the allegations set forth in paragraph "4B(26)" of the Complaint.

31. Denies the allegations set forth in paragraph "4B(27)" of the Complaint.

32. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "4B(28)" of the Complaint.

33. Denies the allegations set forth in paragraph "4B(29)" of the Complaint, except admits that Plaintiff went on leave in or around November 2017.

34. Denies the allegations set forth in paragraph "4B(30)" of the Complaint.

35. Denies the allegations set forth in paragraph "4B(31)" of the Complaint.

36. Denies the allegations set forth in paragraph "4B(32)" of the Complaint, except admits that Plaintiff was asked to attend a conference related to her disciplinary charges on May 3, 2017.

37. Denies the allegations set forth in paragraph "4B(33)" of the Complaint, except admits that Plaintiff reports to Bridget Clarke, who serves under the title of Assistant Coordinating Manger for the ACT Program.

38. Denies the allegations set forth in paragraph "4B(34)" of the Complaint.

39. Denies the allegations set forth in paragraph "4B(35)" of the Complaint.

40. Denies the allegations set forth in paragraph "4B(36)" of the Complaint, except admits that Plaintiff received a "Below Standard" rating on her October 2017 annual

employee performance evaluation, and admits that Plaintiff submitted a rebuttal to that evaluation.

41. Denies the allegations set forth in paragraph "4B(37)" of the Complaint.

42. Denies the allegations set forth in paragraph "4B(38)" of the Complaint, except admits that Plaintiff's title is Clerical Associate II.

43. Denies the allegations set forth in paragraph "4B(39)" of the Complaint.

44. Denies the allegations set forth in paragraph "4B(40)" of the Complaint.

45. Denies the allegations set forth in paragraph "4B(41)" of the Complaint.

46. Denies the allegations set forth in paragraph "4B(42)" of the Complaint, except admits Plaintiff went on leave in or around November 2017.

47. Denies the allegations set forth in paragraph "4B(43)" of the Complaint.

48. Denies the allegations set forth in paragraph "4B(44)" of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "4B(44)" of the Complaint concerning the individuals whom Plaintiff alleges she contacted.

49. Denies the allegations set forth in paragraph "4B(45)" of the Complaint.

50. Denies the allegations set forth in paragraph "4B(46)" of the Complaint.

51. Denies the allegations set forth in paragraph "4B(47)" of the Complaint, except admits that Plaintiff purports to proceed as set forth therein.

52. Denies the allegations set forth in paragraph "5" of the Complaint, except admits that Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) in 2018, that the EEOC issued a notice of right to sue on September 24, 2019, and further denies knowledge or information sufficient to form a belief as

to the truth of the allegation as to when Plaintiff received a notice of right to sue from the EEOC and respectfully refers the Court to the exhibits annexed to the Complaint for a complete and accurate statement of their contents.

53. Paragraph "6" of the Complaint is a demand for relief to which no response is required. To the extent a response is required, Defendant denies the allegations set forth in paragraph "6" of the Complaint.

### FOR A FIRST DEFENSE:

54. The Complaint fails to state a claim upon which relief can be granted in whole or in part.

### FOR A SECOND DEFENSE:

55. Defendant had legitimate nondiscriminatory business reasons for taking any of the alleged acts complained of by Plaintiff.

### FOR A THIRD DEFENSE:

56. Subject to proof of discovery, the damage claims set forth in the Complaint are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

### FOR A FOURTH DEFENSE:

57. Any claims in the Complaint under Title VII which accrued more than 300 days prior to plaintiff's filing of her charge of discrimination with the EEOC are time-barred.

### FOR A FIFTH DEFENSE:

58. Any claims in the Complaint under the SHRL or the CHRL which accrued more than three years prior to plaintiff's filing of the Complaint in this action are time-barred.

### FOR A SIXTH DEFENSE:

59. Plaintiff unreasonably failed to take any the preventative or corrective opportunities provided by Defendant or to otherwise avoid harm. To the extent it is alleged that

any harassing or discriminatory behavior occurred, Defendant exercised reasonable care to prevent and/or promptly correct such conduct.

## FOR A SEVENTH DEFENSE:

60. The conduct complained of may consist of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences, and thus plaintiff's claims under the New York City Human Rights Law must be dismissed.

## FOR A EIGHTH DEFENSE:

61. Defendant H+H established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees, and had a record of no, or relatively few, prior incidents of discriminatory conduct by such employees.

**WHEREFORE**, Defendant respectfully requests that the Complaint be dismissed in its entirety and the relief sought therein be denied in all respects, with such other and further relief as the Court deems appropriate.

Dated:   New York, New York
         May 12, 2021

        **JAMES E. JOHNSON**
        Corporation Counsel of the
          City of New York
        Attorney for Defendant
        100 Church Street, Room 2-184
        New York, New York 10007
        (212) 356-2441
        awanslow@law.nyc.gov

By:   /s/
        Angela M. Wanslow
        Assistant Corporation Counsel

TO:   Jesse C. Rose, Esq. (via ECF)
      THE ROSE LAW GROUP, PLLC
      *Attorneys for Plaintiff*
      3272 Steinway Street, Suite 503
      Astoria, NY 11103
      JRose@TheRoseLawGroup.com
      Direct: (718) 989-1864
      Cell: (347) 709-2584
      Fax: (917) 831-4595

# APPENDIX A

EXHIBIT 2 -

STATEMENT OF FACTS

APPENDIX A



Antonia Kousoulas, Esq.
Admitted to the NY & NJ Bar
akousoulas@kalawyers.com

January 30, 2019

<u>Via email</u>
Ms. Maritza Rondon-Velazquez
Federal Investigator
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004

Re: <u>RIFKA ELIAS V. NYC HEALTH+HOSPITAL CORP - CONEY ISLAND HOSPITAL</u>
   EEOC Charge # 846-2018-08137  (EEOC # 5202017-00458)

Dear Ms. Rondon-Velazquez:

¶1  I have been retained to represent Ms. Rifka Elias in the above-referenced proceeding. I submit this rebuttal statement, along with the annexed exhibits, in further support of Ms. Elias' charge of religious discrimination, retaliation and hostile work environment.

¶2  As a threshold matter, Ms. Elias presented to the EEOC evidence of discriminatory and retaliatory treatment related to her requests for reasonable accommodations to observe her religion. It is undisputed that Ms. Elias is an observant Orthodox Jewish woman and an employee of Health+Hospitals Corporation at Coney Island Hospital ("HHC" or "Respondent"). Ms. Elias was hired in 2011 as a Clerical Associate 2 after having received high scores on civil service exams. She was also highly recommended by her previous employers. In order to provide full context to her pending EEOC charges of discrimination and retaliation, Ms. Elias sets forth the following:

- ¶3 From the onset, Ms. Elias has been subjected to discriminatory treatment and hostile remarks because she is an observant Orthodox Jewish employee. In September of 2011, when Ms. Elias first requested accommodations to observe religious holidays, her then Director, Ms. Claudette Watson, remarked, "Your name is Jewish but I did not think that you were observant; I would have never hired you." Ms. Watson added, "I will get you Fired! If you cannot work 9 to 5 five days a week you should have not accepted the job." During this period, Ms. Watson refused to allow Ms. Elias to leave early on Fridays or take off for Jewish Holidays, including Erev Yom Kipper.

1

¶4
- Ms. Elias complained many times to Jodi Savage at HHC's EEO office, but to no avail. Consequently, Ms. Elias had no choice but to seek the intervention of Assemblyman Dov Hikind. In the interim, Ms. Elias was subjected to harassment from Ms. Watson, and co-workers due to her religious observance, impacting her emotional and physical health and requiring her to take a leave of absence from February 2012 until year 2014.

¶5
- Upon her return to Coney Island Hospital in mid-2014, Ms. Elias reported to a new Program Director, Lilya Berns.

¶6
- In September of 2014, Ms. Berns, the Director of ACT, issued Ms. Elias a satisfactory work performance evaluation. A copy of the evaluation, dated September 22, 2014 is attached as **Exhibit A**. Ms. Elias met all of her assessed standards, and even exceeded one.

¶7
- On or about October 14, 2014, Ms. Elias requested leave for her observance of the Jewish holiday Sukkot. She also requested to leave early on Fridays in order to observe Shabbat. Following Ms. Elias' requests for leave, Ms. Berns attitude toward her abruptly changed to harassing, abusive behavior. Ms. Elias was permitted to take a half-hour lunch and use the remaining time as comp-time in order to leave at 2:00 P.M. on Fridays for her Sabbath observance preparation. ACT Directors, including Ms. Berns, continually retaliated and placed obstacles in the way of Ms. Elias' religious observance. For example, Ms. Berns, knowing that Ms. Elias had limited lunch time, would not allow her to eat at her desk. In contrast, Ms. Berns allowed all other staff and supervisors to eat lunch at their respective desks, utilizing the microwave and refrigerator in Ms. Elias' room. I have attached photographs of the microwave and refrigerator in Ms. Elias room, including a photograph of staff in the room using the microwave oven as **Exhibit B.**

¶8
- Ms. Elias would often lose lunch time minutes because supervisor Bridget Clarke, Assistant Coordinating Manager for the ACT Program, would lock the sign-out sheet in her desk drawer or place it elsewhere, rendering it inaccessible to Ms. Elias for purposes of signing out for has half hour lunch break.

¶9
- Ms. Berns' hostility toward Ms. Elias escalated in or about March 2015, when Ms. Elias requested religious accommodation for her religious observance of Passover. On or about March 12, 2015, Ms. Elias requested leave from April 3rd through April 10th to observe religious holiday Passover. Ms. Berns refused to sign Ms. Elias' SR request for religious accommodation. She insisted that Ms. Elias come in on Friday, April 3, 2015 because Bridget Clarke was taking off that day. Ms. Elias reiterated that her Rabbi's advice that she not work on Friday, April 3, 2015 due to her religious observance of Passover, to no avail.

¶10
- In response to Ms. Berns' refusal to allow her leave during Passover, Ms. Elias contacted her Union, DC37, Dr. John Jannes, Human Resources (Andrew Campbell) and the EEO office (Mr. Keyes), also to no avail. This continued for two weeks, until Ms. Elias finally contacted Assemblyman Dov Hinkind and a hospital administrator, Michael Tenenbaum, who approved her request for Passover leave on March 25, 2015. A copy of Ms. Elias' internal complaint alleging religious discrimination, dated March 15, 2015, is attached as **Exhibit C.**

- On April 2, 2015, Ms. Berns retaliated by issuing a false and premature "annual" evaluation of Ms. Elias's work performance, which for the first time indicated that Ms. Elias had errors in her work, required help in routine matters and needed improvement in

2

APPENDIX A

¶11 all but three categories. The allegations were not only false, but they were not documented with any counseling memoranda. It is clear that the precipitating factor in the negative evaluation, which contrasted in almost every respect from the one issued to Ms. Elias only six months earlier, was retaliation for her request for religious accommodation. Furthermore, the evaluation was issued to Ms. Elias on April 2, 2015, the day of her Passover holiday leave was to begin. When Ms. Elias asked for an extension to provide a rebuttal to the evaluation, Ms. Berns denied her request, despite an explanation from Ms. Elias that during her holiday she was not allowed to write, type or use a computer. Ms. Berns' denial of time for Ms. Elias to respond to the evaluation was clearly punitive in nature and intended to interfere with Ms. Elias' enjoyment and observance of her religious holiday. A copy of the 10/14 -3/20/2015 performance evaluation is attached as **Exhibit D.**

¶12 • When Ms. Elias returned to work from her Passover holiday leave, her keyboard was soiled and discarded chewing gum was placed on her chair and desk.

¶13 • Thereafter, almost on a daily basis, the ACT Program Directors would insult, ignore and otherwise be rude to Ms. Elias, in contrast to how they treated the non-Jewish employees they supervised. Directors, supervisor Bridget Clarke, and co-workers would greet other employees, but exclude Ms. Elias from any salutations or pleasantries. More importantly, they placed an inordinate amount of scrutiny on her work and blamed her for other employees' mistakes.

¶14 • ACT Program Directors were not only hostile to Ms. Elias for requesting religious accommodations, but they also interfered with these accommodations. They would, assign work to Ms. Elias on Friday afternoons, knowing full well that it would interfere with Ms. Elias' need to leave early for her religious observance.

¶15 • During the 2015-2016 year, Ms. Berns made caustic comments about Ms. Elias' religious observances and holidays. On one occasion, when told about Sukkot, Ms. Berns responded, "Howe many more holidays?" and "So many days off, how observant do you need to be?"

¶16 • This hostile attitude toward Ms. Elias for requesting religious accommodations—even when she used her own accrued comp time by taking less time for lunch each day— permeated the workplace. Rhonda Brumfield, a Coney Island Hospital employee assigned to the same department as Ms. Elias, Behavioral Health, and who also served as a union representative, called Ms. Elias an "extremist" for being observant Orthodox Jewish, and stated that if Ms. Elias knew how observant she was, she should not have accepted the job." One of Ms. Elias' co-workers commented: "No one wants to hire Jewish people because of their observance, it affects the office, always taking off."

¶17 • On or about April 27, 2015, Ms. Elias' attorney, Jesse C. Rose, Esq., sent a complaint to Andrew Campbell of Human Resources at Coney Island Hospital, outlining her claims of religious discrimination and retaliation, and rebutting the allegations in the untimely annual evaluation issued earlier that month by Ms. Berns (Exhibit D). Unfortunately, these efforts to stem the discriminatory treatment were of no avail. Rather, Ms. Elias' supervisors intensified their scrutiny of her work and hostile treatment of her, for discriminatory and retaliatory reasons. A copy of the April 27, 2015 letter is attached as **Exhibit E.**

3

APPENDIX A

¶18
- On May 15, 2015, Ms. Elias submitted an "SR" request to leave early at 1:00 P.M. on May 22, 2015 in order to allow her time to travel to the location where she could observe the holiday of Shavout with her family, which is required in order to follow the traditional ceremony and observance. Ms. Berns did not respond. On or about May 20, 2015, Ms. Berns crossed out the May 15, 2015 date on the request, and falsely claimed that Ms. Elias submitted the request on May 20, 2015, citing the "late" submission as a basis to deny Ms. Elias' request to leave early for her religious observance.

¶19
- Ms. Elias was ultimately allowed to leave early on May 22, 2015, but only after she filed multiple complaints and asked her union to intervene. In addition, as the approval was granted at the exact time when Ms. Elias sought to leave (1:00 P.M. on May 22, 2015). she was not able to attend the holiday ceremony. This is yet another instance of Respondents' efforts to interfere with Ms. Elias' religious observances.

¶20
- Ms. Elias' supervisors and co-workers have continued to subject her to a hostile work environment, which has been noticed by others. I have attached as **Exhibit F** a statement that was given to my client on December 30, 2015 (unsolicited) from a Coney Island Hospital Muslim employee on the heels of his retirement. Kofi I.S. Saduddin-Singh wrote: *"I've noticed from the time Ms. Rifka Elias was hired to work here at Coney Island Hospital that an inordinate amount of attention had and continues to be focused upon skills and unwillingness to perform her duties/tasks etc. as a secretary. I feel that too often she's been scrutinized and sometimes belittled when she's requested the right which is sanctioned by the First Amendment to honor and observe her religious duties. Those who are in authority positions seem to lack any true concerns towards honoring the First Amendment which guarantees religious freedom…I further have observed that Ms. Rifka Elias has not been treated at the same level as other employees."*

¶21
- On April 7, 2016, Ms. Elias requested time off to observe the religious holiday of Passover, from April 28, 2016 until May 2, 2016.

¶22
- On April 8, 2016, within one day of requesting the leave as a religious accommodation, Ms. Berns angrily issued Ms. Elias a "green slip" warning in the presence of her co-workers.

¶23
- Ms. Elias' performance evaluation for the September 2015-September 2016 year, was due in September 2016. Ms. Berns waited until Friday, October 14, 2016, the day before Sukkot holiday, to issue her an evaluation rating her "Below Standard." Not only did the false allegations in the evaluation interfere with Ms. Elias' enjoyment of the Sakkut holiday with her family, but they also evinced a familiar pattern by Ms. Berns to issue Ms. Elias' negative evaluations on the eve of her religious holidays—a pattern that evinces discrimination, retaliation, and hostility toward her because she is an observant Orthodox Jew. I have attached the evaluation and Ms.Elias' rebuttal to that evaluation as **Exhibit G.**

¶24
- Throughout her tenure at Coney Island Hospital, Ms. Elias' has claimed that ACT Program Directors and supervisors, including Ms. Berns, have been discriminating against her because of her Jewish religion and retaliating against her for seeking religious accommodations. The issue in this proceeding is not only whether Ms. Elias ultimately received accommodations—through her tenacity and even the intervention of a politician-- but the hostility that she has encountered in seeking the accommodations and the extraordinary steps that she has been required to take to seek compliance with the law.

APPENDIX A

¶25
- On June 14, 2016, the day after her observance of Shavuot, a Jewish holiday, Ms. Elias returned to her office to find that supervisor Bridget Clarke angrily threw items on her desk chair and around Ms. Elias. A copy of Ms. Elias' desk and chair on June 14, 2016 and a copy of a religious calendar indicating that Shavuot was on June 13, 2016 are attached **Exhibit H.**

¶26
- On December 7, 2016, Ms. Elias submitted a "SR" request to leave at 12:30 P.M. on the Fridays of December 23, 2016 and December 30, 2016 in order to observe Sabbath Chanukah. The leave was not approved, prompting Ms. Elias to contact Dr. John Jannes, Bridget Clarke, Joan Neal, Audrey Russell of Human Resources and Blanche Greenfield, Chief Employment Counsel at Health+Hospitals Corporation for approval. The leave was not approved. Ms. Elias correspondence to Ms. Russell and to Ms. Greenfield are attached as **Exhibit I.**

¶27
- In response to Ms. Elias' request, Audrey Russell of Human Resources directed Ms. Elias to "change your religion plan." This was said after Ms. Elias explained to Ms. Russell that she was required to arrive early at the Chanukah candle lighting because it was scheduled to begin at 3:30 P.M. (as those two Chanukah days also fell on the Sabbath) and she needed time to travel to her family's candle lighting ceremony. Ms. Elias even offered to arrive early at work to make up for the time required for her religious observance.

¶28
- Upon information and belief, on or about November 17, 2016, Ms. Elias filed a complaint with the U.S. EEOC alleging that she was subjected to discrimination, retaliation and a hostile work environment because she is an observant Orthodox Jewish employee who had sought and was denied reasonable accommodations for her religious observance. Ms. Elias was issued a complaint number, EEOC No. 5202017- 00458. A right to sue notice associated with that charge number was ultimately issued and also sent to Health + Hospitals Corporation Senior Counsel, Blanche Greenfield, on February 2, 2017.

¶29
- Notwithstanding Ms. Elias' attempts to seek compliance with existing law with regard to her requests for religious accommodation—by first complaining to internally and then to the EEOC—the pattern of arbitrarily denying Ms. Elias' requests for religious accommodation, and then following up with reprisals against Ms. Elias for having the temerity to request the accommodations continued until Ms. Elias was compelled to go on medical leave in November of 2017.

¶30
- On Friday, March 24, 2017, Dr. John Jannes, the Associate Executive Director, scheduled a Finance meeting to take place at Ms. Elias' office. Ms. Elias explained that she would not be able to attend the meeting because that day was her mother's first year Yarzeit (memorial day). Jewish children have an obligation to pray at their parents' gravesite, mourn, fast, and light candles on Yarzeit. Notwithstanding, Dr. John Jannes scheduled a Finance meeting to take place in Ms.Elias' office and directed Ms. Elias to be present to provide updated ACT1 Medicaid Billing printouts. Ms. Elias did not attend her mother's Yarzeit and instead attended the Finance meeting, wherein Assistant Controller Dorie Collington and her staff complimented her on her billing work.

¶31
- Furthermore, On April 27, 2017 after returning to work from her Passover holiday. Ms. Elias was served with disciplinary charges with false allegations, including charges falsely accusing Ms. Elias of not attending the March 24, 2017 Finance meeting on the

5

APPENDIX A

day of her mother's Yarzeit. The charges are still pending and have not been adjudicated. A copy of notice of charges is attached as **Exhibit J**.

¶32
- On May 3, 2017, Ms. Elias was asked to attend a disciplinary meeting related to unwarranted disciplinary charges. Although statements in support of the charges were attributed to Dr. Khoshakhlgh, on May 23, 2017, Dr. Khoshakhlgh, told Ms. Elias that she went to Human Resources to speak to Audrey Russell and complain that Dr. John Jannes had unfairly target Ms. Elias with regard to those charges and had humiliated and degraded Ms. Elias at the disciplinary meeting. Dr. Khoshklogh also informed Ms. Elias of her belief that Ms. Elias was a good employee who had been unfairly targeted and that she wrote a letter to that effect to Dr. Jannes. Two days later, on May 25, 2017, Dr. Sahar Khoshakhlgh was terminated from her position.

¶33
- On July 10, 2017, Bridget Clarke, a supervisor who essentially did the same work as Ms. Elias in ACT 2, but had been promoted to the position of Assistant Coordinating Manager for the ACT Program, Department of Behavioral Health, issued Ms. Elias a directive to assume her duties and manage all aspects of ACT1 and ACT 2 department duties while she was on vacation. Ms. Clarke noted that she trusted Ms. Elias to perform her duties well. A copy of the directive is attached as **Exhibit K**. This belies Respondent's attempts to malign Ms. Elias' work and discipline her for alleged unsatisfactory work performance.

¶34
- During this period, ACT1 co-workers Jolene, Victoria and Natalie, openly made degrading comments about Ms. Elias' Jewish name, Rifka, and repeated her name several times per day while laughing. Ms. Elias is also known by the name of Renee at the office. Yet, these co-workers found it amusing to mock Ms. Elias' Jewish name.

¶35
- On September 20, 2017, Audrey Russell of Human Resources, who should have been well aware that Ms. Elias was scheduled to leave early for the high Jewish holiday of Rosh Hashanah, scheduled a grievance meeting at 1:00 P.M. Again, this is part of a pattern to interfere with Ms. Elias' religious observance and to place obstacles in the way of any religious accommodations that may have been granted, after the painstaking efforts of Ms. Elias.

¶36
- On October 16, 2017, when Ms. Elias returned to work after her Jewish holidays, she was met by Director Mihaila Emilian, who, in a harsh angry voice, told Ms. Elias that she would receive a negative work performance evaluation. It is noteworthy that Ms. Elias received a satisfactory on the main task, Medicaid billing, but was issued an overall unsatisfactory rating. A copy of that evaluation and Ms. Elias' rebuttal are attached as **Exhibit L**.

¶37
- In her rebuttal, Ms. Elias also noted the disparate treatment to which she had been subjected because she an Orthodox Jewish employee who had requested religious accommodation. She noted that she was placed in an office across from three bathrooms with toxic cleaning supplies that impacted her health. Ms. Elias' desk was located next to a radiator. For a period of time, Ms. Clarke and Ms. Elias were in the same office. Upon information and belief, Ms. Clarke asked for a transfer to a new office and the request was granted. Ms. Elias' requests to change offices were denied.

¶38
- As noted earlier, although Ms. Elias' job title is Clerical Associate 2, her daily primary responsibilities entail Medicaid Billing and Coding for ACT 1 patients. To a large extent her responsibilities have mirrored those of Ms. Clarke who is responsible for ACT 2

6

APPENDIX A

patients. Ms. Clarke is not Jewish and, upon information and belief, has had no EEO activity. Although Ms. Clarke's title has been upgraded several times, to date, Ms. Elias' job title has not been upgraded to reflect her Medicaid Billing responsibilities. A grievance regarding this issue has been filed and is pending.

¶39
- On October 16, 2017 when Ms. Elias returned form her Jewish holidays (Simchat Torah on October 13, 2017), the bathroom key, which was always in her office desk was missing. Ms. Elias' co-workers giggled and laughed when she requested the bathroom key from them and they refused to give it to me. Meg Gallo was one of the individuals who denied Ms. Elias a new bathroom key. Bridget Clarke, a supervisor, told Ms. Elias to go to another floor or another building to use the bathroom. ACT 1 staff member, Joeline, told Ms. Elias to "control yourself" with respect to using the bathroom. Co-workers Natalie and Victoria, giggled, laughed and (referring to the observance of Ms. Elias' religion) commented to Ms. Elias words to the effect of since "you lead a controlled religious life, hold yourself back from going to the bathroom." This was just one example of the ongoing abusive behavior to which Ms. Elias was subjected.

¶40
- October 26, 2017 John Freeline and Vladimir, an environmental inspector, finally came to check odor in Ms. Elias' office in room 204 at the Hammet Building and confirmed that the air was toxic and hazardous. They also noted that the bathroom pipe of a PIP3 in the inpatient psych bathroom was connected to the sink in Ms. Elias' office. The toxic odor caused Ms. Elias to suffer from severe headaches, nausea, dizziness and sinus infections and ocular migraines. Again, as noted above, while Respondent granted Ms. Clarke's request to move to another office, HHC did not grant Ms. Elias' requests to change offices. Ms. Elias submits that this was just one way in which she was subjected to reprisals for requesting religious accommodations and filing complaints (internally and with the EEOC) against Respondent.

¶41
- ACT Directors routinely and with impunity interfered with any religious accommodations issued or with Ms. Elias' requests for accommodations. Director Mihalia Emilian, for example, would routinely give Ms. Elias work at the last minute on Fridays, just as she was about to shut her computer down to leave early for Sabbath. Bridget Clarke would often take a late lunch on Fridays and return to work past 2:00 P.M., which was Ms. Elias' scheduled departure time. This required Ms. Elias to stay late, beyond 2:00 P.M. in order to not leave the office unattended. It is noteworthy that on other days during the week when Ms. Elias did not have to leave early for Sabbath, Ms. Clarke would take lunch early.

¶42
- On November 9, 2017, as a result of the unrelenting harassment and unwarranted scrutiny, Ms. Elias was compelled to go on workers' compensation leave. Ms. Elias was treated by Dr. Michael M. Koegel, who noted that she suffered from " headaches, sinus infections, anxiety and nightmares" related to her work situation. She was also treated by Neal Bauer, a psychologist at Nassau Psychology P.C., who noted in a February 4, 2018 note to her employer, that Ms. Elias was being treated for Generalized Anxiety Disorder (F41.1) due to her hostile, discriminatory and retaliation, hostile work environment. Copies of the medical notes are attached as **Exhibit M.**

¶43
- It is noteworthy that Health+Hospitals Corp failed to file the necessary paperwork for Ms. Elias' workers' compensation claim stemming in large part to the hostile work environment that she has endured as an observant Jewish employee. Upon information

7

APPENDIX A

and belief, the Workers' Compensation Board issued a penalty to Health+Hospitals Corp. for this omission. In the interim, Ms. Elias has not been able to return to work.

¶44 Respondent's reliance on the Time-Sheet records attached to its position statement as Exhibit B is unavailing for a number of reasons: First, upon information and belief, the time records may not be entirely accurate. Meg Gallo, who is one of the individuals that Ms. Elias has charged with harassment, would at times whiteout and change the time and code of Ms. Elias' time. Ms. Elias confronted her about his many times. The Time-Sheet recording was done "manually" and there are no electronic sign-in sign-out records that would provide the accurate departure times for Ms. Elias. Second, even if the time records are accurate, the issue here is not whether HHC ultimately granted Ms. Elias' religious accommodation requests, but the lengths to which she had to go to get those accommodations. Ms. Elias even sought the intervention of NYS Assemblyman Dov Hikind, and HHC's Senior Employment Counsel, Blanche Greenfield just to compel her managers to comply with Respondent's policy and the law. Further, as noted in the above timeline, Ms. Elias' accommodations were not granted without overt hostility from her Directors, supervisors, co-workers, some of whom intentionally interfered with Ms. Elias' religious observances. The temporal proximity of Ms. Elias' requests for religious accommodation and the ensuing reprisals (taking the bathroom key away from her and calling her an extremist; placing gum on her desk chair and angrily strewing items on her work desk and chair upon her return from religious holidays; issuing her negative work performance evaluations reviews on the heels of a positive evaluation after she took issue with the denial of leave to observe Passover; serving her disciplinary charges for purportedly not attending a meeting scheduled on the one year anniversary of her mother's death; mocking her Jewish name) clearly supports a finding that Ms. Elias' work environment was permeated with anti-Jewish animus, religious discrimination, and retaliation. Further, Ms. Elias, who essentially performed the same work as Ms. Bridget Clarke did in ACT 2, was never upgraded in title. Ms. Elias was denied equal opportunity in the terms of conditions of her employment

¶45 Ms. Elias further avers that she was subjected to reprisals because she requested religious accommodations and opposed the discriminatory treatment to which she was subjected. Ms. Elias outlined her concerns to Human Resources, Health + Hospitals' counsel, and in her rebuttals to the inaccurate and retaliatory performance evaluations. Instead of taking corrective action to address her concerns, Respondent further retaliated against Ms. Elias. As outlined above, Ms. Elias' Directors, supervisors and co-workers continued to make her work environment so hostile and stressful that it impacted Ms. Elias' emotional and physical health, requiring her to seek medical treatment and medical leave.

¶46 Upon information and belief, none of the individuals who mocked Ms. Elias and her religion, or who outright denied her religious accommodation requests were ever disciplined for their conduct.

8

# APPENDIX A

¶47  In view of the foregoing, I respectfully request that the EEOC issue a probable cause determination with respect to Ms. Elias' charges of discrimination and retaliation.

Respectfully submitted,

ANTONIA KOUSOULAS

Enc.

9

APPENDIX A

Case No. 19-CV-11411-JMF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RIFKA RENEE ELIAS,

                                      Plaintiff,

-against-

CITY OF NEW YORK and NYC HEALTH AND HOSPITAL,

                                      Defendant.

**ANSWER**

*JAMES E. JOHNSON*

*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street, Room 2-184*
*New York, New York  10007*

*Of Counsel:  Angela M. Wanslow*
*Telephone:  (212) 356-2441*
*Matter No.:  2021-005322*

*Due and timely service is hereby admits.*

*New York, N.Y. ......................................................, 2021*

*............................................................................. Esq.*

*Attorney for ......................................................................*